Filed 10/24/24  P. v. Chambers CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　　　v.<br><br>HEATHER SHIREE CHAMBERS,<br><br>　　Defendant and Appellant. | G063918<br><br>(Super. Ct. No. FSB19003215)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of San Bernardino County, Steve Malone, Judge. Affirmed in part, reversed in part, remanded.

Cindy Brines, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

\*　　　　\*　　　　\*

Defendant Heather Shiree Chambers was convicted of one count of murder with a true finding on a gang enhancement and a firearm enhancement. (Pen. Code, §§ 187, 186.22, subd. (b)(1), 12022.53, subds. (d), (e)(1).)[1] She was also convicted of one count of the substantive crime of street terrorism. (§ 186.22, subd. (a).) Chambers contends that effective January 1, 2022, a change in the law amended the gang statute by adding new elements. She claims she is entitled to a reversal of the substantive street terrorism count, the gang enhancement, and the firearm enhancement. She also contends the firearm enhancement required a violation of section 186.22.

The Attorney General concedes the street terrorism count and the gang enhancement should be reversed, and we agree. The Attorney General does not agree with respect to the firearm enhancement, arguing it could be proved without reference to the gang allegations.

We conclude that the firearm enhancement required proof of a violation of section 186.22. Accordingly, the firearm enhancement must also be reversed. Both enhancements and the street terrorism count may be retried should the prosecution wish to pursue them.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

We limit our discussion of the facts to those necessary to decide this appeal.

---

[1] Subsequent statutory references are to the Penal Code unless otherwise indicated.

# I.

## THE HOOKAH LOUNGE INCIDENT

On August 25, 2019, there was an incident in which John Doe 2 (JD2),[2] a 4 Blocc Gang member, and Chambers went to the Hookah Lounge, a location known for gang activity in San Bernardino. JD2 was armed with a loaded 9mm Beretta handgun. Once at the Hookah Lounge, JD2 met up with an individual named Remy Moore. Moore was also armed.

Later that evening, JD2 and Moore were involved in an altercation with Vernon Singleton, who "was drunk and disrespecting the women" at the bar. Later, in the parking lot, Singleton pulled up in his car and began shooting at JD2 and Moore. JD2 aimed his gun in the air and fired what he described as warning shots. Moore returned fire. JD2 left the scene. JD2 described Moore's vehicle as a silver Nissan Sentra.

# II.

## THE AUGUST 26 SHOOTING

The next day, two friends, John Doe (JD1) and Nitesh Kumar drove to JD1's apartment. As they walked through the apartment parking lot, a car matching Moore's Nissan drove slowly through the lot. JD1 saw three people in the vehicle. The car drove by several times. The rear passenger and the front passenger eventually shot at Kumar and JD1, striking and killing Kumar. The police later matched the shell casings at the scene to the casings that had been found in the Hookah Lounge parking lot the night before.

---

[2] There are two witnesses referred to as John Doe in the record, John Doe 1 (JD1) and John Doe 2 (JD2).

It was later learned that shortly before Kumar's shooting, JD2 had received a video call from Chambers. Chambers was in a car, and JD2 was able to see that she was with Moore and Rasheem Wade, called Uno. Moore was in the front passenger seat and Wade was in the backseat. After some general conversation, JD2 asked the vehicle occupants what they were going to do, and Chambers said she was going to take the others to "go slide," which means "try to shoot at people." They were looking for members of rival gangs. They were considering shooting at members of the California Gardens, a rival of 4 Blocc. Shooting a member of the California Gardens allowed a member of 4 Blocc to refer to themselves as GK, or Gardens Killers.

Chambers told JD2 that she wanted Moore "to do a shooting in front of her" because he hadn't done so before. Chambers was a "shot-caller" in the 4 Blocc gang, and subordinate gang members were required to follow her instructions.

Chambers called JD2 again a few hours later. Thereafter, Moore, Wade, and Chambers arrived to see JD2 in Moore's Nissan Sentra. Chambers told JD2 that they had "tried to go find somebody, they thought they seen an enemy, and they had shot at them." They had been looking for Colton City Crips to shoot. Chambers told JD2 that while they were looking, "they were riding down the block, she was driving, and I guess they seen the dude sitting on a brick wall and Wade and Moore had started shooting at him. And I guess the dude ran and they said he had fell. They thought, you know, they had killed him, so they ended up leaving after that." Chambers had seen the person walking and told the others to start shooting.

About a week later, JD2 told Chambers he had heard that an innocent person had been killed in the shooting, and she appeared shocked and said the situation was "f***ed up."

4

After her arrest, Chambers participated in several phone calls that were routinely recorded. In one call, she complained that JD2 had "snitched," which caused her to be caught and arrested. In addition to JD2's statement, the prosecution had evidence that Chambers's cell phone had been in the vicinity of the murder near the time it took place.

At the conclusion of trial, the jury convicted Chambers of one count of murder with the street gang enhancement and the firearm enhancement, as well as one count of street terrorism. (§§ 187, 186.22, subds. (a), (b)(1), 12022.53, subds. (d), (e)(1).) Chambers now appeals.

DISCUSSION

I.

THE GANG ENHANCEMENT AND STREET TERRORISM COUNT

The Legislature enacted Assembly Bill No. 333 (2021–2022 Reg. Sess.) (Stats. 2021, ch. 699, §3) (Assem. Bill No. 333), which altered the law regarding gang crimes under section 186.22. As relevant here, pursuant to the new legislation, imposition of a gang enhancement under subdivision (b)(1) or conviction for street terrorism under subdivision (a) requires proof of the following additional requirements with respect to predicate offenses: (1) the offenses must have "commonly benefited a criminal street gang" where the "common benefit . . . is more than reputational"; (2) the last predicate offense must have occurred within three years of the date of the currently charged offense; (3) the predicate offenses must be committed on separate occasions or by two or more gang members; and (4) the charged offense cannot be used as a predicate offense. (Assem. Bill No. 333; § 186.22, subd. (e)(1)–(2).)

5

The Attorney General concedes, and the parties do not dispute, that the revisions to section 186.22 apply retroactively to cases not yet final on appeal. (*People v. Clark* (2024) 15 Cal.5th 743, 751.)

The record reflects that the evidence at trial did not establish the murder, or all of the predicate offenses, were committed by two or more gang members. Nor does the evidence establish the other requirements of the revised statute. The Attorney General concedes, and we agree, that both the street terrorism count and the street gang enhancement on the murder count require reversal.

II.

THE FIREARM ENHANCEMENT

Where the parties disagree, however, is about the status of the firearm enhancement to the murder count pursuant to section 12022.53, subdivisions (d) and (e)(1). Chambers contends the firearm enhancement must also be reversed because the record indicated that she was charged, convicted, and sentenced based on a gang-related firearm enhancement under both relevant subdivisions of section 12022.53, subdivisions (d) and (e)(1).

Section 12022.53, subdivision (d) states, in relevant part: "Notwithstanding any other law, a person who, in the commission of a felony specified in subdivision (a) . . . personally and intentionally discharges a firearm and proximately causes . . . death . . . shall be punished by an additional and consecutive term of imprisonment in the state prison for 25 years to life."

Section 12022.53, subdivision (e)(1) states: "The enhancements provided in this section shall apply to any person who is a principal in the commission of an offense if *both* of the following are pled and proved: [¶] (A)

6

The person violated subdivision (b) of Section 186.22. [¶] (B) Any principal in the offense committed any act specified in subdivision (b), (c), or (d)." (Italics added.) In the amended information, it was alleged that a firearm enhancement applied "within the meaning of Penal Code sections 12022.53 (d) and (e)(1)."[3]

"The changes wrought by Assembly Bill [No.] 333 also require that we vacate the firearm enhancement . . . findings in this case (§ 12022.53, subds. (b)-(d), (e)(1) . . .). Every true finding on the firearm enhancement allegations that the jury made was based on subdivision (e)(1) of section 12022.53, which provides that the court may impose additional sentences listed in subdivisions (b) through (d) if two conditions are found to be true: (1) the defendant was a principal in the underlying crime and violated section 186.22, subdivision (b); and (2) any principal in the offense committed any act listed in subdivisions (b) through (d) in section 12022.53." (*People v. Lee* (2022) 81 Cal.App.5th 232, 239.)

The same is true here. Given the facts, the jury must have concluded the firearm enhancement was true under both subdivisions (d) and (e)(1). As the trial court noted "[t]he evidence is clear that Ms. Chambers did not actually fire the firearm. . . . Her involvement is, she was involved in a [crime] that was committed for the benefit of a criminal street gang, which is evidenced by the fact that the jury found . . . a violation of Penal Code Section 186.22(a)."

The jury was instructed with both CALCRIM Nos. 1402 and

_____

[3] The prosecution also alleged firearm enhancements under "sections 12022.53(c) and (e)(1)" and section "12022.53(b) and (e)(1)," although it appears that the only theory pursued at trial was under section 12022.53, subdivisions (d) and (e)(1).

3150. CALCRIM No. 1402, the instruction on the "gang-related firearm enhancement" under section 12022.53, subdivision (e), is very clear that finding the defendant guilty of murder for the benefit of, at the direction of, or in association with, a criminal street gang was a prerequisite to considering the firearm enhancement. The Bench Notes for CALCRIM No. 1402 state: "In order for the defendant to receive an enhancement under Penal Code section 12022.53(e), the jury must find both that the defendant committed a felony for the benefit of a street gang and that a principal used or intentionally discharged a firearm in the offense. Thus, the court **must give** CALCRIM No. 1401, *Felony or Misdemeanor Committed for Benefit of Criminal Street Gang*, with this instruction and the jury must find both allegations have been proved before the enhancement may be applied." (The record reflects the jury was also instructed with CALCRIM No. 1401.)

The court also instructed the jury with CALCRIM No. 3150, which is the general instruction on the personal use of a firearm enhancement under sections 667.61, subdivision (e)(3), and 12022.53, subdivision (d). No gang connection is required for this version of the enhancement.

The special verdict forms reflect the jury found the firearm enhancement true under section 12022.53, subdivision (e), which requires the connection to the street gang. The jury found it true that Chambers "committed the crime for the benefit of, at the direction of, or in association with a criminal street gang." There was no special verdict form for the version of the enhancement that did not require a connection to a street gang. While the Attorney General contends "the verdict form demonstrates that the firearm enhancement was premised on a violation of section 12022.53,

8

subdivision (b)"[4] this is clearly inaccurate. The verdict form closely tracks the language of CALCRIM No. 1402. A minute order from the date of the jury's verdict reflects that the jury found the firearm enhancement true pursuant to section 12022.53, subdivisions (d) *and* (e)(1). Accordingly, the most reasonable interpretation of the record is that Chambers was found guilty of the version of the firearm enhancement under 12022.53, subdivisions (d) and (e)(1), which require both proof of street gang participation and the use of a firearm by a principal.

This is further supported by the fact that the court relied almost entirely on Chambers's gang involvement as the reasoning behind sentencing her to an additional 25 years under section 12022.53, subdivisions (d) and (e)(1). "[I]t appears from the evidence that the clear motive to this killing . . . was that Ms. Chambers had a place of standing within her criminal street gang, and she wanted to bring up other gang members, two younger members—I believe the evidence showed they were not actually other admitted gang members, but she was trying to promote them into the gang. So she was trying to encourage them to commit violent acts, felonies, so that they could have increased standing and be more likely to be placed into the criminal street gang."

The court continued: "Chambers took a leadership role in the commission of this offense. She played a domina[nt] role in that she was driving, searching out someone to kill for the purpose of street gang violence rivalry. She drove by and she slowed the car down so the other shooters

---

[4] In offering this argument, the Attorney General cites to a page in the record that does not exist. The Attorney General also argues its position based on the fact that CALCRIM No. 3150 was provided to the jury, while ignoring that the jury was also instructed with CALCRIM No. 1402.

would have an opportunity to fire their shots. [¶] Under our California law, *she therefore is responsible for an additional 25-year enhancement for the gang involvement.* I do believe that in the interest of justice, it's appropriate to apply that." (Italics added.)

Because the firearm enhancement was dependent on the jury's underlying findings regarding the gang pursuant to section 186.22, the firearm enhancement must also be reversed, subject to retrial at the prosecution's discretion.

## DISPOSITION

Both the firearm enhancement (§ 12022.53, subds. (d), (e)(1)) and the gang enhancement (§ 186.22, subd. (b)(1)) on the murder count are reversed and the matter is remanded for resentencing. The street terrorism count (§ 186.22, subd. (a)) is also reversed. The prosecution is entitled to a retrial if it so desires. (*People v. Figueroa* (1993) 20 Cal.App.4th 65, 71.) In all other respects, the judgment is affirmed.


MOORE, ACTING P. J.

WE CONCUR:


MOTOIKE, J.


GOODING, J.


10